LOKEN, Chief Judge.
In County of Sacramento v. Lewis, 523 U.S. 833, 836, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court held that, “in a high-speed automobile chase aimed at apprehending a suspected offender .... only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation.” *977 We subsequently held “that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender,” regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate. Helseth v. Burch, 258 F.3d 867, 871 (8th Cir.2001) (en banc), cert. denied, 534 U.S. 1115, 122 S.Ct. 924, 151 L.Ed.2d 888 (2002), overruling Feist v. Simonson, 222 F.3d 455 (8th Cir.2000).
In this case, Deputy Sheriffs Brek Larson and Shawn Longen, responding to a domestic disturbance call, drove through a red light with their emergency lights and siren activated and collided with Talena Terrell’s car in the intersection. Terrell died, and her heirs and next of kin brought this action under 42 U.S.C. § 1983, alleging that the deputies’ reckless driving violated her right to substantive due process. The district court denied defendants’ motion for summary judgment based on qualified immunity. Larson and Longen appealed. A divided panel of this court affirmed the denial of qualified immunity to Deputy Larson, limiting the holdings of Lewis and Helseth to “high speed police pursuits aimed at apprehending a suspected offender.” Terrell v. Larson, 371 F.3d 418, 424 (8th Cir.2004). We granted en banc review, vacated the panel’s decision, and now reverse as to both deputies.
At 10:05 p.m. on.December 29, 2000, the Anoka County Sheriff Department’s radio dispatcher transmitted the following call:
[ — ] Jewell St. [Complainant’s] wife, twenty-three year old female, is at the location threatening to harm their three year old child. She’s currently locked herself in the bedroom, no weapons. She was unaware that the complainant has called.
The call was assigned priority level three, described as “a very high priority.”
Deputy Sheriffs Larson and Longen were on duty, working and eating dinner at a substation some ten miles from the reported disturbance. As the call was in their assigned patrol area, Larson radioed that they would provide back-up to the responding patrol car. One minute later, another deputy radioed that he was responding as back-up and that Larson and Longen could cancel. The dispatcher advised Larson, “you can cancel,” Larson replied, “we’ll continue,” the dispatcher replied, “I covered you,” and Larson repeated, “we’ll continue.” Moments later, the dispatcher radioed, “Copy to all for considering, 2038 [another patrol car] advising by phone that he’s backing also.” Deputies Larson and Longen embarked in their patrol vehicle for Jewell Street, with Larson driving. As they approached the intersection of Highway 65 and Crosstown Boulevard at very high speed, yellow flashing lights warned that the stoplight was about to turn red. Larson slowed to about 40 miles per hour, then sped up when he saw no cars in the intersection. The traffic light turned red, and the patrol vehicle broadsided Terrell’s car in the intersection. At impact, the patrol vehicle was traveling 60-64 miles per hour.
In their Third Amended Complaint, Terrell’s heirs and next of kin alleged that the deputies’ decision to respond to the call and their operation of the vehicle “were conscience-shocking, and reckless, callous, outrageous and deliberately indifferent to the rights of Talena Terrell.” Larson and Longen moved for summary judgment, arguing there is no evidence of intent to harm and therefore they are at least entitled to qualified immunity under Lewis and Helseth. Conceding they have no evidence of intent to harm, plaintiffs argued, and the district court agreed, that sum *978 mary judgment was improper because whether defendants were responding to an emergency is a disputed issue of fact that will determine whether deliberate indifference, or intent to harm, is the applicable standard of fault.
1. Lewis teaches that the proper approach for resolving an asserted qualified immunity defense is “to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all,” and then to “ask whether the right allegedly implicated was clearly established at the time of the events in question.” 523 U.S. at 841 n. 5, 118 S.Ct. 1708. To establish a substantive due process violation, plaintiffs must show that “the behavior of the [deputies was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.” Lewis, 523 U.S. at 847 n. 8, 118 S.Ct. 1708.[1] Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to. establish that the defendant’s conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. Lewis, 523 U.S. at 848-49, 118 S.Ct. 1708. The deliberate indifference standard “is sensibly employed only when actual deliberation is practical.” Lewis, 523 U.S. at 851, 118 S.Ct. 1708; see Wilson v. Lawrence County, 260 F.3d 946, 957 (8th Cir.2001). By contrast, the intent-to-harm standard most clearly applies “in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.” Neal v. St. Louis County Bd. of Police Comm’rs, 217 F.3d 955, 958 (8th Cir.2000).
In determining the requisite level of culpability in this case, we reject the panel majority’s conclusion that the controlling force of Lewis is limited to high-speed police driving aimed at apprehending a suspected offender. The Supreme Court’s analysis of the culpability issue in Lewis was framed in far broader terms. See Dillon v. Brown County, 380 F.3d 360, 363-64 (8th Cir.2004). Likening the sudden, difficult decision whether to pursue a fleeing suspect to decisions that must be made in quelling a prison riot, the Court adopted the Eighth Amendment intent-to-harm standard of Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), explaining:
Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and'frequently without the luxury of a second chance.... A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passenger, other drivers, or bystanders.
*979 523 U.S. at 853, 118 S.Ct. 1708 (quotation omitted). Similarly, police officers deciding whether to respond to an emergency domestic disturbance call must make a quick decision how best to protect the public and maintain lawful order. Those responding must arrive at the scene quickly to quell violence, protect children, and assist anyone who is injured, so responding from afar will invariably require the same type of high-speed driving as the chase of a fleeing suspect. Domestic disturbances are “notoriously volatile and unpredictable,” Elwood v. Rice County, 423 N.W.2d 671, 678 (Minn.1988), so the number of police officers needed to defuse the situation is rarely known in advance. Like the officer who made a quick decision to give chase in Lewis, police officers responding to this type of emergency call do not have “the luxury ... of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.” 523 U.S. at 853, 118 S.Ct. 1708.
Thus, the panel majority’s decision flies in the face of the Lewis analysis and threatens to deter police officers from deciding to respond to emergency calls, thereby increasing the risk of harm to citizens caught up in these crises. See Helseth, 258 F.3d at 871. No doubt for this reason, to our knowledge every circuit to consider the issue has applied the Lewis intent-to-harm standard to “those myriad situations involving law enforcement and government workers deployed in emergency situations.” Radecki v. Barela, 146 F.3d 1227, 1230 (10th Cir.1998) (unanticipated struggle for police officer’s firearm); accord Carter v. Simpson, 328 F.3d 948, 952 (7th Cir.2003) (back-up squad car responding to emergency call of a reported death); Clay brook v. Birchwell, 199 F.3d 350, 359-61 (6th Cir.2000) (reacting to dangerous actions of an armed man); Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 372 (9th Cir.1998) (quelling gunfight in progress). Similarly, every circuit to consider a high-speed driving situation prior to Lewis concluded that police officers are not subject to substantive due process liability for alleged reckless or grossly negligent driving in response to emergencies other than suspect pursuits. See Apodaca v. Rio Arriba County Sheriff’s Dep’t, 905 F.2d 1445, 1446-47 (10th Cir.1990) (responding to silent burglar alarm); Cannon v. Taylor, 782 F.2d 947, 950 (11th Cir.1986) (disturbance call); Walton v. Salter, 547 F.2d 824, 825 (5th Cir.1976) (armed robbery call).
For these reasons, we hold that the intent-to-harm standard of Lewis applies to an officer’s decision to engage in high-speed driving in response to other types of emergencies, and to the manner in which the police car is then driven in proceeding to the scene of the emergency. See Slusarchuk v. Hoff, 346 F.3d 1178, 1182-83 (8th Cir.2003), cert. denied, - U.S.-, 124 S.Ct. 2018, 158 L.Ed.2d 492 (2004); Helseth, 258 F.3d at 871.
2. The district court denied defendants’ motion for summary judgment on a narrower ground, concluding that a genuine issue of fact exists as to whether the call Larson and Longen were responding to “was reasonably regarded as an emergency.” As Terrell urged, the court adopted an objective test to resolve this issue, ruling that the deliberate indifference culpability standard will apply if the jury finds that Larson and Longen were not responding to a true emergency. This was an error of law. To be sure, in deciding excessive force claims under the Fourth Amendment, “the question is whether the officers’ actions are ‘objectively reasonable’ in light of the facts and circumstances confronting them, without *980 regard to their underlying intent or motivation.” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). But substantive due process liability, like Eighth Amendment liability, turns on the government official’s evil intent, either criminal recklessness, if the deliberate indifference standard applies, see Farmer v. Brennan, 511 U.S. 825, 836-37, 114 S.Ct. 1970, 128 L.Edüd 811 (1994), or intent-to-harm, if the standard of Lewis and Whitley v. Albers applies. Because substantive due process liability is grounded on a government official’s subjective intent, and because the intent-to-harm standard applies “when unforeseen circumstances demand an officer’s instant judgment” and “decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance,” Leivis, 523 U.S. at 853, 118 S.Ct. 1708, we conclude that this issue turns on whether the deputies subjectively believed that they were responding to an emergency.[2]
On appeal, plaintiffs argue, as they did in the district court, that a jury could find that the situation was not reasonably regarded as an emergency by Larson and Longen because they “volunteered” to provide back-up and then persisted in responding after being advised they were “covered” and could “cancel.” But whether Larson and Longen could reasonably have decided that they were not needed as additional back-up is irrelevant. Under Lewis, the intent-to-harm culpability standard applies if they believed they were responding to an emergency call.
3. During the en banc argument, the question was raised for the first time whether Deputy Larson believed he was responding to an emergency. It was noted that the police department’s internal affairs investigators reported that Larson said one reason he decided not to cancel was that responding would give Deputy Longen, “a rookie, some good experience handling that type of call.” Plaintiffs did not raise this issue in the district court, or on appeal. Indeed, they argued to the district court that Larson’s belief that an emergency existed was “not the issue and not relevant.” The same internal affairs report concluded: “based on the factors stated by Deputy Larson, he still believed this to be a high-priority, threatening-type call and because of that continued driving emergency.” Larson submitted an affidavit to that effect early in the summary judgment process, and counsel for plaintiffs did not challenge the averral in Larson’s later, lengthy deposition. On this record, it is undisputed that Larson and Longen believed they were responding to an emergency. Therefore, the intent-to-harm standard applies as a matter of law.
4. Alternatively, we conclude that Deputies Larson and Longen are entitled to summary judgment even under the deliberate indifference standard of fault adopted by the panel majority and the district court. To prevail on their substantive due process claim, plaintiffs must prove, not only that the deputies’ behavior reflected deliberate indifference, but also that it was “so egregious, so outrageous, that it may fairly be said to shock the *981 contemporary conscience.” Lewis, 523 U.S. at 847 n. 8, 118 S.Ct. 1708. Not all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term. See Leiuis, 523 U.S. at 849, 118 S.Ct. 1708 (“some official acts in this range may be actionable”) (emphasis added). Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury. See Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (“arbitrary government action that must ‘shock the conscience’ of federal judges”); City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (Souter, J., concurring in part and dissenting in part) (“Substantive due process claims are, of course, routinely reserved without question for the court,” citing Lewis, 523 U.S. at 853-55, 118 S.Ct. 1708); Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir.1998); Mason v. Stock, 955 F.Supp. 1293, 1308 (D.Kan.1997).
The district court and the panel majority erred in failing to consider whether defendants’ conduct was conscience shocking. While the decision to respond committed the deputies to high-speed driving that always entails some risk to highway safety, responding to this type of emergency within a police officer’s assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. Traffic accidents of this nature are tragic but do not shock the modern-day conscience. That Deputy Larson violated police department regulations in proceeding through the intersection at high speed may raise an issue of state tort law, but it is not of substantive due process significance. As the Supreme Court reiterated in Lewis, “the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.” 523 U.S. at 848, 118 S.Ct. 1708 (quotation omitted).
The order of the district court is reversed, and the case is remanded with directions to dismiss plaintiffs’ § 1983 substantive due process claims.
LAY, Circuit Judge,

. To violate substantive due process, the con- . duct of an executive official must be conscience shocking and must violate "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.” Moran v. Clarke, 296 F.3d 638, 651 (8th Cir.2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (quotation omitted). The latter inquiry is not an issue in this case.

. We need not consider whether a different rule should apply if an official's claim of perceived emergency is so preposterous as to reflect bad faith. Here, it is undisputed that, prior to the accident, Larson and Longen only heard the initial dispatch that a young mother had locked herself in a bedroom and was threatening to harm her three-year-old child. From the perspective of a police officer deciding whether to respond, the dispatch without question described an emergency, that is, a situation needing the presence of law enforcement officers as rapidly as they could arrive, even if that entailed the risks inherent in high-speed driving.