with whom HEANEY and BYE, Circuit Judges, join, dissenting.
Today’s decision has the effect of giving police officers 26-requalified immunity when they demonstrate deliberate indifference to the safety of the general public. A police officer may now kill innocent bystanders through criminally reckless driving that blatantly violates state law, police department regulations, accepted professional standards of police conduct, and the community’s traditional ideas of fair play and decency so long as the officer subjectively, though unreasonably, believed an emergency existed. The majority’s holding extends Lewis’s high-speed pursuit rule from its intended purpose of protecting officers forced to make split-second decisions in the field to a per se rule that now shields officers even after they have had an actual opportunity to deliberate at the police station. Believing that 42 U.S.C. § 1983 gives citizens a remedy for egregious abuses of executive power that deprive citizens of their constitutional right to life, we dissent.
Initially, two questions in this interlocutory appeal of qualified immunity need to be confronted. First, did Terrell suffer a violation of a constitutional right, and second, assuming that she has, was that right clearly established at the time of the collision. See County of Sacramento v. Lewis, 523 U.S. 833, 842, n. 5, 118 S.Ct. 1708, 140 *982 L.Ed.2d 1043 (1998). As with review of motions for summary judgment generally, in determining whether or not qualified immunity exists in a given case, we resolve all factual disputes in favor of the non-moving party. See Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).[3] With the factual issues resolved in favor of Terrell, we then ask the purely legal question of whether Larson’s conduct violated Terrell’s clearly established constitutional rights. See Cunningham v. City of Wenatchee, 345 F.3d 802, 807 (9th Cir.2003); see also Bingham v. City of Manhattan Beach, 329 F.3d 723, 725 (9th Cir.2003).
I. ConstitutionaT Violation.
To establish a legally cognizable substantive due process claim under § 1983, Terrell must identify an arbitrary abuse of executive power that “shocks the conscience.” Lewis, 523 U.S. at 846, 118 S.Ct. 1708. As the Supreme Court has recognized, “the measure of what is conscience shocking is no calibrated yard stick ....” Id. at 847, 118 S.Ct. 1708. What shocks the conscience in one situation may not shock the conscience in another. Id. at 850, 118 S.Ct. 1708. At one end of the culpability spectrum is mere negligence, which is never sufficient to establish a constitutional violation. Id. at 849, 118 S.Ct. 1708. At the other end of the spectrum is “conduct intended to injure,” which generally will “rise to the conscience-shocking level.” Id.[4], In between these two extremes is a middle range of culpability known as “deliberate indifference.” Id. The question of whether conduct falling within this middle range reaches the point of conscience-shocking depends on an “exact analysis of circumstances” in a given case. Id. at 850, 118 S.Ct. 1708. In situations where actual deliberation by an officer is practical, conduct that is deliberately indifferent may shock the conscience. Id. at 851, 118 S.Ct. 1708.
In Helseth v. Burch, 258 F.3d 867 (8th Cir.2001), this court held “that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender.” Id. at 871. The majority reasons that Lewis and Helseth compel application of the intent-to-harm standard. However, Lewis and Helseth did not announce a per se rule that the intent-to-harm standard should be applied whenever an officer voluntarily embarks on a high-speed response in the absence of an emergency. To the contrary, the holdings in Lewis and Hel-seth were specifically directed at high-speed police pursuits aimed at apprehending a suspected offender.
*983 The facts of this case, viewed in the light most favorable to Terrell, present a situation where the deputies were “afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action .... ” Neal v. St. Louis County Bd. of Police Comm’rs, 217 F.3d 955, 958 (8th Cir.2000).[5] Deputies Larson and Lon-gen were at the police station eating dinner and doing paperwork when they heard the dispatcher’s transmission. Initially, the transmission described a situation that required immediate attention, and Larson’s initial response that he would provide backup was appropriate. However, one minute after Larson’s response and before the deputies were prepared to leave the substation, another' deputy said he would assist and told Larson that he could “cancel.” The dispatcher repeated that Larson could cancel his response, but Larson informed the dispatcher he would continue to the call. The dispatcher again told Larson, “I covered you,” but Larson repeated that he would continue, primarily to give a trainee officer, Longen, experience in a high-priority call.[6] Shortly thereafter, yet another deputy said he would also provide assistance.
All of the communications took place before Larson and Longen left the. police station. Before the deputies even reached their patrol vehicle, they knew at least two other deputies were already en route to provide backup for the primary responders. While en route, Larson and . Longen saw that another deputy was ahead of them on his way to the call. Yet, Larson wanted to give Longen training as to how to respond in a high-priority call. In our view, these facts support a conclusion that the deputies had time to deliberate whether it was necessary to rush towards the scene at speeds reaching ninety-five miles per hour, going through a red light at sixty to sixty-five miles per hour on a winter night in a full-size pickup truck that Larson was driving for the first time.
Not only do these facts support a conclusion that actual deliberation was practical, the statements of Deputy Larson confirm that he actually did deliberate. According to the Anoka County Sheriffs Office Internal Affairs Investigation Unit, Deputy Larson said he decided to respond to the call “to give Longen, a rookie, some good experience handling that type of a call.” *984 Anoka County Sheriffs Office Internal Affairs Investigation #2001-005, dated November 6, 2001, at 7. The majority’s emphasis on the similarities between high-speed pursuit and high-speed response is misplaced. Lewis compels an examination of the officer’s opportunity to deliberate, not his mode of travel. We find it strange indeed that under the rule announced today, the deliberate indifference standard no longer applies when an officer has the opportunity to deliberate and actually does deliberate.
We submit there are significant distinctions between this high-speed response case and suspect pursuit cases such as Lewis and Helseth. First, while officers pursuing suspected offenders generally find themselves, when acting in their official duties, in situations which are thrust upon them, see Lewis, 523 U.S. at 853, 118 S.Ct. 1708, here Larson made a conscious, voluntary decision to respond to the domestic disturbance call even after he was informed that other deputies were responding and he could cancel. Second, while suspect pursuits require instantaneous decisions and on-the-spot reactions, see id., Larson and Longen were eating dinner and doing paperwork when they received the call and were afforded the opportunity to deliberate their response before leaving the police station. Finally, officers involved in suspect pursuits may be required to violate traffic laws or risk losing the suspect. In contrast, Larson and Longen were not in danger of losing a suspect or of leaving the primary officers in this case without adequate backup, as they were aware other deputies were on their way to the scene. In view of these distinctions, we conclude the obvious lack of exigent circumstances convince us that the intent-to-harm standard is inappropriate in non-emergency response situations.
Having concluded that deliberate indifference is the appropriate standard to be applied in resolving the issue of qualified immunity in this case, we next consider whether the facts of this case are sufficient to show that Larson acted with deliberate indifference. In this regard, Lewis instructs that we must apply “an exact analysis” of “the totality of facts in a given case.” Id. at 850, 118 S.Ct. 1708 (citation omitted). The deliberate indifference standard requires that the defendant know of and disregard a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 836-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). We consider the conduct of Larson and .Longen separately.
With respect to Deputy Longen, Plaintiffs allege that Longen failed to intervene to prevent the crash that killed Ms. Terrell. We cannot say, however, that Deputy Longen’s conduct in this case shows deliberate indifference. Deputy Longen was a probationary officer at the time of the crash and was merely riding along with Deputy Larson. Terrell has alleged no facts showing that Longen had any authority to overrule Larson’s decision to respond to the call or to order Larson to stop at the red light as they approached the intersection. Rather, the facts suggest Longen had no choice but to accompany Larson as he responded to the call. Thus, we conclude Terrell’s allegations concerning Deputy Longen are, as a matter of law, insufficient to show that his actions in accompanying Larson were taken with deliberate indifference to the rights of Ms. Terrell.
Deputy Larson’s actions are another matter. Despite knowledge that at least two other deputies were on their way to provide backup and that he could cancel, Larson voluntarily decided to respond to the call. It was a December night. The roads were wet and slushy, and Larson *985 was driving an unfamiliar vehicle. As Larson approached the intersection, he recognized that the traffic light was about to turn red, but, instead of stopping, Larson sped through the intersection at an estimated speed of sixty to sixty-four miles per hour. Given his training as a deputy sheriff, Larson certainly was aware of the danger to public safety that arises when a police officer decides to violate a traffic light. The Internal Affairs report concluded that Larson violated state law regulating officers engaged in emergency driving, violated department regulations, and drove in a manner totally inconsistent with his training. We believe the facts as alleged show that Larson disregarded the substantial risk of harm attendant to running a red light, especially given the fact that Larson sped up as he entered the intersection instead of proceeding cautiously at a much slower rate of speed.[5] In our view, the alleged facts of this case, taken in the light most favorable to Terrell, are sufficient to show that Larson was deliberately indifferent to a substantial risk of harm.
Context is of vital importance in due process analysis. What is considered conscience-shocking in one setting may fall short of that standard in another context. See Lewis, 523 U.S. at 850, 118 S.Ct. 1708. Lewis mandates an exact analysis of the totality of facts in a given case “before any abuse of power is condemned as conscience shocking.” Id. We have applied such an analysis here and conclude that, when a police officer not faced with an emergency drives his vehicle through a red light at sixty-four miles per hour on a dark and snowy winter night and kills an innocent seventeen year-old girl, such actions rise to the level of conscience-shocking. Therefore, we would hold that the Plaintiffs have alleged a constitutional violation of Ms. Terrell’s substantive due process right to be free of arbitrary deprivation of her life.
II. Clearly Established Right.
Deputy Larson would enjoy qualified immunity if Terrell’s substantive due process right was not clearly established as of December 29, 2000, the time of the collision. See Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir.2001). In order for a right to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he- is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, this does not mean that the precise conduct at issue must have been addressed by a court for an officer to reasonably believe his actions are unlawful. See Wilson, 260 F.3d at 951. “Rather, it need only be apparent from pre-existing law that the conduct is unlawful.” Id.; see also Anderson, 483 U.S. at 640, 107 S.Ct. 3034.
There can be no doubt that Ms. Terrell had a substantive due process right to be free from the state’s arbitrary deprivation of her life. ■ Supreme Court cases too numerous to fist have recognized this right. See Lewis, 523 U.S. at 840, 118 S.Ct. 1708 (recognizing the plaintiffs substantive due process right to life). Likewise, as of December 29, 2000, the deputies were on notice that they could be held liable for their reckless driving. As of the date of the collision, the Supreme Court’s decision *986 in Lewis had established that the deliberate indifference standard would apply in situations other than suspect pursuits where actual deliberation is practical. See 523 U.S. at 851, 118 S.Ct. 1708. Lewis further established that a police officer acting with deliberate indifference could be held liable for his conduct. See id. at 849-50, 118 S.Ct. 1708. Thus, we conclude the law in effect at the time of the collision was clearly established. Accordingly, we would hold that Larson was not entitled to summary judgment based on qualified immunity.
III. Conclusion.
In this appeal we are merely asked to pass upon qualified immunity. “[W]e ... do not pass upon[ ] the questions whether or to what extent [Larson] may be held responsible for the acts charged, if proved. Nothing in our decision forecloses any defense other than qualified immunity .... ” Hope v. Pelzer, 536 U.S. 730, 746, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).[6]
We would hold that Deputy Larson was not entitled to qualified immunity, and would affirm the district court’s denial of Larson’s motion for summary judgment in this respect. However, we would reverse the district court’s denial of the motion for summary judgment with respect to Deputy Longen and remand the case with directions to dismiss the Plaintiffs’ substantive due process claims against Deputy Longen.
HEANEY, Circuit Judge,

. The majority creates an unknown rule of law that requires the § 1983 plaintiff, at the summary judgment stage, to establish the officer’s subjective state of mind regarding the existence of an emergency. While we agree with the majority that a § 1983 plaintiff must establish an “evil intent” in the form of criminal recklessness under the deliberate indifference standard to establish ultimate liability, we part company with the majority when it states that judicial review of the facts surrounding the case must start and end with an inquiry into the officer's subjective state of mind. We note the majority cites no authority for this novel approach.

. As the Supreme Court observed in Lewis, "It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's intentional misuse of his vehicle.” 523 U.S. at 854 n. 13, 118 S.Ct. 1708 (citing Checki v. Webb, 785 F.2d 534, 538 (5th Cir.1986)). The Anoka County Sheriff's Office Internal Affairs report establishes that Larson’s use of his vehicle violated state law and department regulations. There should be little doubt that Larson intentionally misused his vehicle here.

. See also Wilson v. Lawrence County, 260 F.3d 946, 956-57 (8th Cir.2001) (holding application of the deliberate indifference/subjective recklessness standard was' appropriate where officers, who allegedly coerced a confession from the defendant and failed to investigate other leads, had time to deliberate various alternatives prior to selecting a course of action); Entergy, Arkansas, Inc. v. Nebraska, 241 F.3d 979, 991 (8th Cir.2001) (recognizing that the conduct of state officials may shock the conscience if their actions were taken with deliberate indifference to a party's protected rights where the "officials had an opportunity to consider various alternatives"); Ewolski v. City of Brunswick, 287 F.3d 492, 511 (6th Cir.2002) (applying the deliberate indifference standard to police officers’ conduct during a standoff because the facts presented a situation where actual deliberation was practical). Although under the facts and circumstances of Neal the court held that the deliberate indifference standard did not apply, the court approved application of the standard in situations where officers had the opportunity to deliberate, and we have subsequently applied the standard in cases like Wilson.

. , The majority discounts this information on the ground that it was not raised in the district court and not asserted by Terrell on appeal. In taking this position, the majority overlooks the fact that this statement was in the record and that this court can affirm on any basis contained in the record. See King v. Fletcher, 319 F.3d 345, 347 (8th Cir.2003); Wilson v. Spain, 209 F.3d 713, 716 (8th Cir.2000); Hall v. Lhaco, Inc., 140 F.3d 1190, 1193 (8th Cir.1998); White v. Moulder, 30 F.3d 80, 82 (8th Cir.1994). See also 28 U.S.C. § 2106 (2004).

. We note that Minnesota Statutes § 169.03 requires drivers of emergency vehicles who are responding to an emergency call to slow down as necessary for safety and proceed cautiously through red lights or stop signs after sounding the emergency siren and displaying red lights. Minn.Stat. § 169.03, subd. 2. Larson had received training concerning these requirements, but nonetheless proceeded through the intersection at an excessive rate of speed.

. Although we would affirm the district court’s denial of qualified immunity, we would do so on different grounds. This interlocutory appeal is allowed under Mitchell v. Forsyth, 477 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411(1985). The issue of qualified immunity is a question of law, not one of fact. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In passing on this limited issue, this court must view all facts on the record, whether in dispute or not, in the light most favorable to the plaintiff. See Hope v. Pelzer, 536 U.S. 730, 733 n. 1, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). If this case were allowed to advance to trial, the jury would not be informed of our legal ruling on qualified immunity, and the jury would be instructed upon and make its findings of fact regarding the existence of an emergency.