**John H. LEDDY and Jane Ruddell,**

v.

**TOWNSHIP OF LOWER MERION, Lower Merion Township Police Department, and Officer Michael Bedzela.**

**No. CIV. A. 00–385.**

United States District Court, E.D. Pennsylvania.

Sept. 22, 2000.

---

Christopher C. Fallon, Jr., Cozen and O'Connor, Philadelphia, PA, for Plaintiffs.

Denise M. Bowman, Stradley, Ronon, Stevens & Young, LLP, Malvern, PA, Patrick R. Kingsley, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM

LUDWIG, District Judge.

Defendants Township of Lower Merion, Township of Lower Merion Police Department, and Officer Michael Bedzela moved for summary judgment as to count one of the amended complaint. Fed.R.Civ.P. 56.[1] On September 21, 2000, an order was entered granting the motion.[2]

On the afternoon of July 5, 1999, Officer Bedzela, a member of the Lower Merion Township Police Department, was driving his police car on Lancaster Avenue in Ardmore, Pa. He was travelling, in response to a non-emergency radio call,[3] at an excessive rate of speed.[4] Amended complt. at 3. Entering Lancaster Avenue from a parking lot, plaintiff Leddy made a left-hand turn to proceed eastward and the

vehicles collided. *Id.* at 3. Plaintiff sustained personal injuries as a result of the accident. *Id.* at 4–5.

The issue is whether the officer's allegedly negligent and reckless operation of the police car amounted to a constitutional tort and, if so, whether there is a basis for municipal liability.[5] Inasmuch, as a matter of law, the officer's conduct does not appear to have constituted a civil rights violation, it will be unnecessary to go beyond that question.

### Officer Bedzela

"In order to state a claim under § 1983, plaintiff must show that defendants, acting under color of state law, deprived [him] of a right secured by the Constitution or federal law." *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460, 465 (E.D.Pa.2000) (citing *Morse v. Lower Merion School District,* 132 F.3d 902, 907 (3d Cir.1997)). The first inquiry is to determine what constitutional or federal statutory right is implicated. *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998).[6] Here it is alleged that plaintiff

---

1. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant has the burden of showing that there is no genuine issue of fact. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The opposing party must point to specific, affirmative evidence in the record—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Omnipoint v. Newtown Township,* 219 F.3d 240, 242 (3d Cir.2000).

2. The amended complaint includes four counts on behalf of plaintiff John H. Leddy: count one—a § 1983 claim; counts two and three—negligence and recklessness; count four—battery, against defendant Bedzela. Count five is plaintiff Ruddell's loss of consortium claim. Since count one was the sole predicate for federal jurisdiction and a protective state action is pending, jurisdiction over the supplemental claims was relinquished.

3. *See* Lower Merion Township Personnel Report completed by Sgt. Michael C. Norman. Pltfs.' mem. ex. G; defs.' mem. ex. D. The narrative states that Officer Bedzela was dispatched to "assist on a suspicious vehicle parked unoccupied."

4. According to the amended complaint, Officer Bedzela's car was going in excess of 50 miles per hour in a 25 mile per hour zone. Plaintiff's expert placed his speed between 57 and 61 miles per hour. *See* pltfs.' mem., ex. E, p. 4. Defendants' expert found it to be a minimum of 49.8 miles per hour. *See* defs.', mem., ex. D.

5. Given that the police department is a division of the municipality, the two will be treated as a single entity. *See Bonenberger v. Plymouth Township,* 132 F.3d 20, 25 (3d Cir. 1997).

6. Section 1983 does not create any substantive rights, serving instead as a vehicle for federal violations. *See Morse* at 906–07.

Leddy's Fourteenth Amendment substantive due process right and "liberty interest in his bodily integrity" were tortiously violated. Amended complt. at 5.

■ *Lewis* established a constitutional injury standard: "[T]he substantive component of the Due Process Clause is violated by executive action only when 'it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Lewis*, 523 U.S. at 847, 118 S.Ct. at 1717 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992)).[7] However, "Lewis ... makes clear that a plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred." *Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir.2000) (en banc).

■ Because context is important, whether an official's actions shock the conscience is analyzed along a "culpability spectrum." *Lewis* at 849, 118 S.Ct. 1708, 118 S.Ct. at 1718. Negligence is "categorically beneath the threshold" and will never qualify as conscience shocking *Id.* The spectrum begins above that level, and in "some circumstances conduct that is deliberately indifferent will shock the conscience." *Nicini* at 810. But in other circumstances, a higher degree of culpability will be required. This is true, at least in part, because "[a]s the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual delib-

eration is practical." *Lewis* at 849, 118 S.Ct. at 1718.

In *Nicini,* the Court of Appeals applied the "deliberate indifference" standard to determine whether a foster care caseworker's actions shocked the conscience. In this particular situation, there was "time 'to make unhurried judgments,'" *Nicini* at 811, and so the analysis occupied the lowest end of the culpability spectrum. Nevertheless, the caseworker's actions did not shock the court's conscience, and summary judgment was granted for defendants.[8] *Id.* at 815.

*Lewis* involved a high speed police chase, a setting analogized by the Court to a prison riot, using Eighth Amendment analysis. Situations such as a high speed chase or a prison riot, where "unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose.... Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for Due Process liability in a pursuit case." *Lewis* at 854, 118 S.Ct. at 1720.

■ The two ends of the culpability spectrum, in terms of both law and fact, can be defined as follows: "deliberate indifference" when deliberation is "practical" and "purpose to cause harm" when instantaneous decisions and immediate judgments are required.

Last year, in *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir.1999), our

---

7. Prior to *Lewis,* our Court of Appeals had favored a "shocks the conscience" standard only for police pursuits. *See Davis v. Township of Hillside*, 190 F.3d 167, 170 n. 2 (3d Cir.1999)("In our pre-*Lewis* decision in *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir.1994)(*Fagan II* ), we applied the shocks the conscience standard to the § 1983 claims of bystanders, without discussion."). Since *Lewis*, however, the Court of Appeals has applied a "shocks the conscience" standard in various situations. *See, e.g., Fuentes v. Wagner*, 206 F.3d 335, 348 (3d Cir.2000)(inmate placed in a restraint chair while a prison disturbance was quelled); *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d

Cir.1999)(removal of children from mother's custody); *Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir.2000) (en banc) (caseworker placed child in a foster family where abuse occurred).

8. *Nicini* involved a child placed in foster care who was abused by the foster father. The Department of Youth and Family Services had a limited opportunity to investigate the suitability of the foster family before the placement decision. The caseworker did complete a basic background check and a social worker found the child to be happy in the home. *Nicini* at 815.

Court of Appeals helped to delineate the culpability spectrum. It noted that "the circumstances of each case are critical. A much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks." *Miller*, 174 F.3d at 375. In *Miller*, a social worker petitioned for an emergency hearing to approve the removal of children from their mother for suspected abuse. "A social worker acting to separate parent and child does not usually act in the hyperpressurized environment of a prison riot or a high-speed chase.... However, he or she rarely will have the luxury of proceeding in a deliberate fashion...." *Miller* at 375. Because of the lack of time for real deliberation:

> in order for liability to attach, a social worker need not have acted with the "purpose to cause harm," but the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach the level of gross negligence or arbitrariness that indeed "shocks the conscience."

*Id.* at 375–76.

In *Cannon*, 86 F.Supp.2d at 468 (E.D.Pa.2000), another circumstance was identified that fell between the two culpability extremes. The police were undertaking a large-scale manhunt for a gunman who had recently shot an officer and broken into plaintiff's house. *Id.* at 463. Plaintiff informed an officer that she was having chest pains and shortness of breath and needed to go to the hospital. *Id.* The officer refused to take her, and a police roadblock prevented a neighbor from doing so. *Id. Cannon* held that "although the police activity in this case may not rise to the level of the 'hyperpressurized' environment of a police chase, ... in the context of a chaotic and dangerous crime scene, [it] does not shock the conscience." *Id.*

 The circumstances of the present case lie between the parameters of deliberate and spontaneous. Unlike the police

officer in *Lewis* who was engaged in a pursuit, Officer Bedzela was on a non-emergency call, albeit one that required immediate attention. Also unlike the *Nicini* caseworker, he did not have time to make unhurried judgments. More akin to *Miller* and *Cannon*, while full deliberation may not have been practicable, the needs of the situation were not so exigent that only a purpose to cause harm would shock the conscience. As articulated in *Miller*, culpability in an intermediate setting requires at least "gross negligence or arbitrariness." *Miller*, 174 F.3d at 375–376. Under this criterion, if Officer Bedzela was driving between 57 and 61 miles per hour without lights and sirens, his conduct, while not condonable, cannot be said to have shocked the conscience. His was a situation where "obligations ... tend to tug against each other." *Lewis*, 523 U.S. at 853, 118 S.Ct. at 1720. His duty was to respond quickly to a dispatch call without creating undue risks to others on the way. His high rate of speed on a crowded roadway may well have been negligent and conceivably reckless, but cannot be characterized as constitutionally conscience shocking.

This conclusion is supported by three pre-*Lewis* non-pursuit police vehicle collision decisions from other Circuits—*Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.1996) (deputy sheriff traveling at 82 miles per hour without signal lights or siren struck vehicle making a left turn, held, did not "transform state tort claim" into constitutional violation); *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir.1996) (police officer driving at excessive speed, without lights and siren, entered intersection against red traffic signal, killing other driver, held, not a constitutional violation); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1446–47 (10th Cir. 1990) (deputy sheriff going 55–65 miles per hour on blind curve, with a posted limit of 35 after midnight in rain and sleet without lights or siren, in response to a burglar alarm, held, did not violate constitutional

rights of driver who made a left turn into speeding deputy's path).[9]

### Municipal Liability

 The amended complaint alleges a violation by the Township of plaintiff Leddy's constitutional rights as a result of its policies, customs, and failure to train or discipline police officers. The familiar rule is that a municipality is not subject to § 1983 liability unless the tort in question was, in effect, the act of that entity. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (citing *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990).

In *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) the Court held: "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite besides the point." It follows that if the actions of Officer Bedzela did not reach the level of a constitutional tort, the Township through its police department can not be liable because of an inadequate policy or ineffective training program. However, our Court of Appeals has not applied this principle in all municipal liability cases. In *Mark v. Borough of Hatboro,* 51 F.3d 1137 (3d Cir.1995), a panel commented:

> [W]e note that there is some inconsistency in our circuit as to the standard governing the underlying constitutional violation in policy, custom or practice cases.... [T]he *Fagan [v. City of Vineland,* 22 F.3d 1296 (3d Cir.1994) ] panel opinion appeared to hold that a plaintiff can establish a constitutional violation predicate to a claim of municipal liability simply by demonstrating that the policymakers, acting with deliberate indifference, enacted an inadequate policy that caused an injury. It appears that by focusing exclusively on the "deliberate indifference" prong of the *Collins* test, the panel opinion did not apply the first prong—establishing an underlying constitutional violation.

*Mark* at 1153 n. 13.

As *Mark* suggests, the first prong is essential to the rationale of *Monell*—that a municipality should be held accountable not on the basis of vicarious liability, but only for misconduct it has approved or fostered. Or as succinctly and metaphorically couched in *Andrews:* "[I]t is impossible on the delivery of a kick to inculpate the head and find no fault with the foot." *Andrews,* 895 F.2d at 1481.

---

**9.** These decisions rely in part on *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (*overruled in part by Daniels,* 474 U.S. at 330, 106 S.Ct. at 664). "Presumably under this [inclusive] rationale, any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983." *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917 (citing

*Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). *See also Lewis,* 523 U.S. at 848–49, 118 S.Ct. at 1718 ("We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials ...." ) (citing *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663)).