# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-1293

———————

James Terrell, as Trustee for the heirs     *
and next of kin of Talena Terrell;     *
Jordan E. Terrell, individually; Warren     *
Kvistberg, individually, and on behalf     *
of minors Kyle Kvistberg and Kaila     *
Kvistberg; Tammy Kvistberg, individu-     *
ally, and on behalf of minors Kyle     *
Kvistberg and Kaila Kvistberg; Amos     *
Kvistberg, individually; Donald     *
Gibbons, individually; Rebecca     *
Gibbons, individually; Gary Kvistberg,     *
individually; Lorraine P. Anderson,     *   Appeal from the United States
suing as Lorraine P. (Kvistberg)     *   District Court for the
Anderson, individually,     *   District of Minnesota.
    *
      Plaintiffs - Appellees,     *   [PUBLISHED]
    *
      v.     *
    *
Brek Andrew Larson, Anoka County     *
Sheriff's Deputy; Shawn Aaron     *
Longen, Anoka County Sheriff's     *
Deputy,     *
    *
      Defendants - Appellants.     *

———————

Submitted: October 24, 2003
Filed:  June 10, 2004

———————

Before LOKEN, Chief Judge, LAY and HEANEY, Circuit Judges.
_____

PER CURIAM.

The fundamental issue in this interlocutory appeal is whether the denial of summary judgment based on qualified immunity for the defendant police officers was correctly decided by the district court.[1]  We hold that it was, but for reasons which differ from the district court's analysis.

Talena Terrell was killed when Anoka County Deputy Sheriffs Brek Larson and Shawn Longen, who decided to respond to a domestic disturbance call even though they had been told other officers were covering the call, drove through a red light and collided with the vehicle driven by Terrell.  Terrell's heirs and next of kin filed this § 1983 substantive due process action against Larson, Longen, and other defendants not involved in this appeal.  Our review of the district court's ruling on qualified immunity is limited to whether the Plaintiffs have alleged a constitutional violation and whether the right violated was clearly established at the time of the conduct.  See Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001).  We affirm in part and reverse in part.

## I.    BACKGROUND

At 10:03 p.m. on December 29, 2000, the Anoka County 911 service received a call to the effect that the caller's wife had locked herself and their three-year-old son in a bedroom and was threatening to run off with the child.  The caller stated that the

_____

[1]The denial of summary judgment based on qualified immunity is "immediately appealable to the extent the appeal seeks review of . . . purely legal determinations." Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001).

situation was not an emergency, but he was concerned about his son's well-being. At 10:05 p.m., the dispatcher made the following transmission:

> 20[---] Jewel Street. [Complainant's] wife, 23-year-old female, is at the location threatening to harm their three year old child. She's currently locked herself in the bedroom, no weapons. She was unaware that the complainant has called.

The call was assigned a level three priority, which meant it was in the "urgent" category.

At the time of the transmission, Deputies Larson and Longen were doing paperwork and eating dinner at a police substation. Deputy Longen was a probationary officer at the time and was "riding along" with Deputy Larson because his field training officer was off duty. Because Jewel Street was within their assigned backup area, Larson and Longen immediately prepared to respond to the call. Larson radioed to dispatch that he would provide backup to the primary responders. One minute later, before Larson and Longen had left the substation, another deputy radioed that Larson could "cancel" because he was responding as the backup in place of Larson. The dispatcher informed Larson of this, but Larson responded, "we'll continue." The dispatcher responded, "I covered you," but Larson again said "we'll continue." Seconds later, the dispatcher notified all units that yet another deputy had advised that he, too, was en route to the Jewel Street call to provide backup to the primary responders. Larson and Longen nevertheless decided to proceed in their patrol vehicle, a new Ford F-250 pickup truck that Larson had never driven before his shift that day.

With Larson driving, the deputies departed for Jewel Street with the siren and emergency lights activated. As the deputies approached Highway 65, which was a short distance from the substation, they saw one of the other responding deputies pass. Larson followed the deputy at a distance of one-quarter mile at speeds as high

as 95 miles per hour. The posted speed limit on Highway 65, a four-lane divided highway, was 65 miles per hour. The road was wet and slushy.

As Larson approached the intersection of Highway 65 and Crosstown Boulevard, he was alerted by a flashing yellow signal located on the roadside two-tenths of a mile before the intersection that the light was about to turn red. Ahead, the other deputy went through the intersection on the green light. Larson slowed to 30-45 miles per hour because he knew the light was about to turn red. However, after seeing no vehicles going through the intersection, Larson sped up as he entered the intersection. Just then, Terrell's vehicle entered the intersection slowly on the green light from the right, and the two vehicles collided. Larson's estimated speed at the time of the collision was 60-64 miles per hour. Terrell died from the injuries sustained in the collision.

Deputy Larson had received training that when a vehicle operating in an emergency-response mode goes through a red light, it must first slow almost to a stop when entering the intersection, continue to observe opposing traffic, and then proceed through the intersection at no more than 10-20 miles per hour. An Anoka County Sheriff's Department internal affairs investigation concluded that Deputy Larson violated Department policy on emergency response procedures. The investigation concluded Deputy Larson violated the Department's policy regarding the emergency operation of vehicles because he did not drive with due regard to the safety of all persons, did not carefully weigh the risk inherent in disregarding traffic laws, and did not slow down enough when he ran the red light. The investigation also concluded Larson did not use good judgment in carrying out his duties and had not properly weighed the consequences of his actions. Larson received a thirty-day suspension for his misconduct.

Terrell's heirs and next of kin brought suit, asserting a denial of Terrell's right to substantive due process under the Fourteenth Amendment and alleging that the

deputies' actions in this case "were conscience-shocking, and reckless, callous, outrageous and deliberately indifferent to the rights of Talena Terrell."

Larson and Longen moved for summary judgment, arguing that their actions did not constitute a violation of Terrell's right to substantive due process and that they were entitled to qualified immunity. The district court denied the motion, reasoning that factual issues concerning whether the deputies had time to deliberate and whether the situation was reasonably regarded as an emergency precluded summary judgment. Larson and Longen now appeal.

## II.    QUALIFIED IMMUNITY

Larson and Longen's argument that no constitutional violation has been alleged in this case is actually the first step we must follow in determining whether qualified immunity shields the deputies from liability. Accordingly, our discussion will focus on the applicability of qualified immunity in this case.

The district court denied qualified immunity in this case partially on the ground that there was a question of fact on the issue of whether there was an emergency. The Plaintiffs contend that under Johnson v. Jones, 515 U.S. 304 (1995), this court lacks jurisdiction to review the district court's ruling. The Plaintiffs are mistaken. The applicability of qualified immunity is a question of law for the court. See Nelson v. County of Wright, 162 F.3d 986, 989 (8th Cir. 1998). We are guided by the case of Behrens v. Pelletier, 516 U.S. 299 (1996). In Behrens, the Supreme Court made clear that in determining whether or not there exists qualified immunity in a given case, the district court and this court are to "resolve all factual disputes in favor of the plaintiff and look at the purely legal question of whether the defendant's alleged conduct violated the plaintiff's clearly established constitutional rights." See Cunningham v. City of Wenatchee, 345 F.3d 802, 807 (9th Cir. 2003); see also Bingham v. City of Manhattan Beach, 329 F.3d 723, 725 (9th Cir. 2003)

Police officers are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). When qualified immunity is raised as a defense in a § 1983 action, we first must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right. Id. at 201; see also County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). If a constitutional violation can be made out on the facts alleged, we then must ask whether the right was clearly established at the time of the conduct at issue. Lewis, 523 U.S. at 841, n.5; Saucier, 533 U.S. at 201.

## A.    *Constitutional Violation*

A violation of the Fourteenth Amendment right to substantive due process may be shown by conduct that "shocks the conscience." Lewis, 523 U.S. at 846-47. As the Supreme Court has recognized, "the measure of what is conscience shocking is no calibrated yard stick." Id. at 847. The primary question in this appeal is what level of culpability should be required to establish that the actions of Larson and Longen were conscience-shocking. At one end of the culpability spectrum is mere negligence, which is never sufficient to establish a constitutional violation. Id. at 849. At the other end of the spectrum is "conduct intended to injure," which generally will "rise to the conscience-shocking level." Id. In between these two extremes is a middle range of culpability known as "deliberate indifference." Id. at 849-50. The question of whether conduct falling within this middle range reaches the point of conscience-shocking depends on an "exact analysis of circumstances" in a given case. Id. at 850. *In cases where actual deliberation by an officer is practical, conduct that is deliberately indifferent may shock the conscience.* Id. at 851.

In Lewis, the Supreme Court addressed the requisite level of fault to be applied in a high-speed automobile chase aimed at apprehending a suspected offender. Id. at 836. The Supreme Court rejected the Ninth Circuit's conclusion that deliberate indifference was the appropriate degree of fault to be applied and held that in the context of suspect-pursuit cases "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation." Id. In Helseth v. Burch, 258 F.3d 867 (8th Cir. 2001), this court held "that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender." Id. at 871.

On appeal, Larson and Longen argue Lewis and Helseth compel application of the intent-to-harm standard. However, Lewis and Helseth did not announce a per se rule that the intent-to-harm standard should be applied whenever an officer voluntarily embarks on a high-speed response. To the contrary, the holdings in Lewis and Helseth were specifically directed at high-speed police pursuits aimed at apprehending a suspected offender.

Applying the principles of Lewis, we conclude this case falls within the middle range of culpability and is best considered using the "deliberate indifference" standard. We hold the facts of this case, viewed in the light most favorable to the Plaintiffs, present a situation where the deputies were "afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action." Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000); see also Entergy, Ark., Inc. v. Nebraska, 241 F.3d 979, 991 (8th Cir. 2001) (recognizing that the conduct of state officials may shock the conscience if their actions were taken with deliberate indifference to a party's protected rights where the "officials had an opportunity to consider various alternatives"); Wilson, 260 F.3d at 956-57 (holding application of the deliberate indifference/subjective recklessness

standard was appropriate where officers, who allegedly coerced a confession from the defendant and failed to investigate other leads, had time to deliberate various alternatives prior to selecting a course of action); Ewolski v. City of Brunswick, 287 F.3d 492, 511 (6th Cir. 2002) (applying the deliberate indifference standard to police officers' conduct during a standoff because the facts presented a situation where actual deliberation was practical). Although under the facts and circumstances of Neal the court held that the deliberate indifference standard did not apply, the court approved application of the standard in situations where officers had the opportunity to deliberate, and we have subsequently applied the standard in cases like Wilson. See also Putnam v. Keller, 332 F.3d 541, 548 (8th Cir. 2003) (applying deliberate indifference standard where community college officials had the opportunity to deliberate before deciding what action to take against a faculty member).

Deputies Larson and Longen were at a police substation eating dinner and doing paperwork when they heard the dispatcher's transmission. Initially, the transmission described a situation that required immediate attention, and Larson's initial response that he would provide backup was appropriate. However, one minute after Larson's response and before the deputies were prepared to leave the substation, another deputy said he would assist and told Larson that he could "cancel." The dispatcher repeated that Larson could cancel his response, but Larson informed the dispatcher he would continue to the call. The dispatcher again told Larson, "I covered you," but Larson repeated that he would continue. Shortly thereafter, yet another deputy said he would also provide assistance.

All of the communications took place before Larson and Longen left the substation. Before the deputies even reached their patrol vehicle, they knew at least two other deputies were already en route to provide backup for the primary responders. While en route, Larson and Longen saw that another deputy was ahead of them on his way to the call. In our view, these facts support a conclusion that the deputies had time to deliberate whether it was necessary to rush towards the scene at

speeds reaching 95 miles per hour, going through a red light on a winter night in a full-size pickup truck that Larson was driving for the first time. The facts present a situation where actual deliberation was practical. See Lewis, 523 U.S. at 851.

The dissent fails to consider Larson's high-speed approach in light of the governing circumstances of the case. The dissent justifies the officers' actions based on the domestic disturbance, insisting that this created an emergency to which the officers were responding.[2]

The dissent fails to mention that the officers created an emergency of their own. Deputy Larson reported that he would respond to a domestic disturbance, even though he was told that other officers were covering the situation. Larson was told to "cancel," but he decided he would "continue." By telling him, "I covered you," the

---

[2]The dissent reads:

> Deputies Larson and Longen had to decide whether to respond to an emergency domestic disturbance call in which a mother was reportedly locked in a bedroom threatening to harm her young child. Domestic disturbances are "notoriously volatile and unpredictable." Elwood v. Rice County, 423 N.W.2d 671, 678 (Minn. 1988). The police must arrive quickly to quell violence, protect children, and assist anyone who is injured, so responding will inevitably require the same type of high-speed driving as the chase of a fleeing suspect. The number of police officers needed to defuse the situation is rarely known in advance, so the decisions of available officers whether to respond "have to be made in haste, under pressure, and frequently without the luxury of a second chance." Thus, like the officer who made a quick decision to give chase in Lewis, Larson and Longen did not have "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." 523 U.S. at 853.

We totally disagree with the last sentence of the above paragraph in the dissent.

dispatcher had assured Larson that there was no need for him to go to the scene of the disturbance. He nevertheless decided he would go.

Placing Deputy Larson's high-speed response in an objective light, we conclude any emergency was voluntarily created by Larson himself. There was no necessity as far as Larson was concerned to respond in the manner he did. He had been told to cancel his backup because other officers were responding. His actions were completely voluntary. In resolving the question of qualified immunity for Deputy Larson, there is no question of fact involved because under Plaintiffs' allegations and evidentiary proof, there was no need for him to embark on an emergency response. Thus, we deem Deputy Larson's response as entirely voluntary and hold that under such facts, as a matter of law, his conduct must be appraised under the deliberate indifference standard.[3]

We thus submit there are significant distinctions between the present case and suspect-pursuits cases such as Lewis and Helseth. First, while officers pursuing suspected offenders generally find themselves, when acting in their official duties, in situations which are thrust upon them, see id. at 853, here Larson and Longen made a conscious, voluntary decision to respond to the domestic disturbance call even after they were informed that other deputies were responding and they could cancel. Second, while suspect pursuits require instantaneous decisions and on-the-spot reactions, see id., Larson and Longen were eating dinner and doing paperwork when they received the call and were afforded the opportunity to deliberate their response

---

[3]The cases cited by the dissent involving negligent driving in response to non-emergency situations are distinguishable from the present case. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996), cert. denied, 522 U.S. 966 (1997); Hill v. Shobe, 93 F.3d 418, 420-21 (7th Cir. 1996); Leddy v. Township of Lower Merion, 114 F. Supp. 2d 372, 376 (E.D. Pa. 2000). Those cases contained no facts from which the court could conclude that the deliberate indifference standard applied or that the officers' actions were taken with deliberate indifference.

before leaving the police substation. Finally, officers involved in suspect pursuits may be required to violate traffic laws or risk losing the suspect. In contrast, Larson and Longen were not in danger of losing a suspect or of leaving the primary officers in this case without adequate backup, as they were aware other deputies were on their way to the scene. In view of these distinctions, we conclude Larson and Longen had time to deliberate before taking the actions they did. Furthermore, it should be obvious that the circumstantial needs of this situation were not so exigent that the intent-to-harm standard should apply.

Having concluded that deliberate indifference is the appropriate standard to be applied in this case, we next consider whether the facts of this case are sufficient to show that Larson and Longen acted with deliberate indifference. In this regard, Lewis instructs that we must apply "an exact analysis" of "the totality of facts in a given case." Id. at 850. The deliberate indifference standard requires that the defendant know of and disregard a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994). We consider the conduct of Larson and Longen separately.

With respect to Deputy Longen, the Plaintiffs have alleged that he failed to intervene to prevent the crash that killed Ms. Terrell. We cannot say, however, that Deputy Longen's conduct in this case shows deliberate indifference. Deputy Longen was a probationary officer at the time of the crash and was merely riding along with Deputy Larson. The Plaintiffs have alleged no facts showing that Longen had any authority to overrule Larson's decision to respond to the call or to order Larson to stop at the red light as they approached the intersection. Rather, the facts suggest Longen had no choice but to accompany Larson as he responded to the call. Thus, we conclude Plaintiffs' allegations concerning Deputy Longen are insufficient to show that his actions in accompanying Larson were taken with deliberate indifference to the rights of Ms. Terrell.

-11-

The Plaintiffs' allegations concerning Deputy Larson, however, are another matter. Despite knowledge that at least two other deputies were on their way to provide backup and that he could cancel, Larson voluntarily decided to respond to the call. It was a December night. The roads were wet and slushy, and Larson was driving an unfamiliar vehicle. As Larson approached the intersection, he recognized that the traffic light was about to turn red, but, instead of stopping, Larson sped through the intersection at an estimated speed of 60-64 miles per hour. Given his training as a deputy sheriff, Larson certainly was aware of the danger to public safety that arises when a police officer decides to violate a traffic light. We believe the facts as alleged show that Larson disregarded the substantial risk of harm attendant to running a red light, especially given the fact that Larson sped up as he entered the intersection instead of proceeding cautiously at a much slower rate of speed.[4] In our view, the alleged facts of this case, taken in the light most favorable to the Plaintiffs, are sufficient to show that Larson was deliberately indifferent to a substantial risk of harm.

Context is of vital importance in due process analysis. What is considered conscience-shocking in one setting may fall short of that standard in another context. See Lewis, 523 U.S. at 850. Lewis mandates an exact analysis of the totality of facts in a given case "before any abuse of power is condemned as conscience shocking." Id. We have applied such an analysis here and conclude that, under the particular facts presented, Larson's actions rise to the level of conscience-shocking. Therefore, we hold that the Plaintiffs have alleged a constitutional violation of Ms. Terrell's right to substantive due process.

---

[4]We note that Minnesota Statutes § 169.03 requires drivers of emergency vehicles who are responding to an emergency call to slow down as necessary for safety and proceed cautiously through red lights or stop signs after sounding the emergency siren and displaying red lights. Minn. Stat. § 169.03, Subd. 2. Larson had received training concerning these requirements, but nonetheless proceeded through the intersection at a speed nearing the posted speed limit on Highway 65.

B.  *Clearly Established Right*

We next address whether Larson would nevertheless be entitled to qualified immunity.  This inquiry depends on whether the right violated was clearly established as of December 29, 2000, the time of the alleged constitutional violation.  See Wilson, 260 F.3d at 951.  In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  However, this does not mean that the precise conduct at issue must have been addressed by a court for an officer to reasonably believe his actions are unlawful.  See Wilson, 260 F.3d at 951.  "Rather, it need only be apparent from pre-existing law that the conduct is unlawful."  Id.; see also Anderson, 483 U.S. at 640.

The Plaintiffs contend that as of December 29, 2000, the deputies were on notice that they could be held liable for their conduct in responding to a disturbance call.  We agree.  The Supreme Court's decision in Lewis established that the deliberate indifference standard would apply in situations, other than suspect pursuits, where actual deliberation is practical.  Lewis, 523 U.S. at 851.  Lewis also established that a police officer acting with deliberate indifference could be held liable for his conduct.  See id. at 849-50.  Thus, we conclude the law in effect at the time of the collision was clearly established.  Accordingly, we hold that Larson was not entitled to summary judgment based on qualified immunity.

## III.  CONCLUSION

For the reasons set forth in this opinion, we hold that Deputy Larson was not entitled to qualified immunity, and we affirm the district court's denial of Larson's and Longen's motion for summary judgment in this respect.  However, we reverse the district court's denial of the motion for summary judgment with respect to Deputy

Longen and remand the case with directions to dismiss the Plaintiffs' substantive due process claims against Deputy Longen.

LOKEN, Chief Judge, dissenting in part.

In County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998), the Supreme Court held that, "in a high-speed automobile chase aimed at apprehending a suspected offender . . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation." We subsequently held "that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender," regardless of whether the chase conditions arguably afforded the pursuing officers time to deliberate. Helseth v. Burch, 258 F.3d 867, 871 (8th Cir. 2001) (en banc), cert. denied, 534 U.S. 1115 (2002), overruling Judge Lay's panel opinion in Feist v. Simonson, 222 F.3d 455 (8th Cir. 2000). The majority declines to apply these controlling precedents to this case and, in so doing, needlessly creates a conflict in the circuits. I respectfully dissent.

The majority first limits Lewis and Helseth as precedents by refusing to apply their intent-to-harm standard to any high-speed police pursuit other than one "aimed at apprehending a suspected offender." Supra p.7. The majority then holds that the deliberate indifference standard applies in this case because deputies Larson and Longen had "a reasonable time to deliberate" in the police station before deciding to respond to the emergency call. Supra p.7, quoting Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000). I disagree.

In adopting an intent-to-harm standard for the substantive due process claim in Lewis, the Supreme Court focused on the officer's decision to give chase:

Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance. A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

. . . Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case . . . .

523 U.S. at 853-54 (citations and quotation omitted). This reasoning surely points to the same standard of causation for the situation faced by the officers in this case.

Deputies Larson and Longen had to decide whether to respond to an emergency domestic disturbance call in which a mother was reportedly locked in a bedroom threatening to harm her young child. Domestic disturbances are "notoriously volatile and unpredictable." Elwood v. Rice County, 423 N.W.2d 671, 678 (Minn. 1988). The police must arrive quickly to quell violence, protect children, and assist anyone who is injured, so responding will inevitably require the same type of high-speed driving as the chase of a fleeing suspect. The number of police officers needed to defuse the situation is rarely known in advance, so the decisions of available officers whether to respond "have to be made in haste, under pressure, and frequently without the luxury of a second chance." Thus, like the officer who made a quick decision to give chase in Lewis, Larson and Longen did not have "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." 523 U.S. at 853.

-15-

In these circumstances, the majority's decision to apply a standard less than intent-to-harm flies in the face of Lewis. It also threatens to paralyze future police responses to emergencies, thereby increasing the risk of harm to citizens caught up in these crises. See Helseth, 258 F.3d at 871. No doubt for this reason, every circuit to consider the issue prior to Lewis concluded that police officers are not subject to substantive due process liability for driving recklessly in response to emergencies other than suspect pursuits. See Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445 (10th Cir. 1990) (responding to burglar alarm with neither lights nor siren activated); Cannon v. Taylor, 782 F.2d 947 (11th Cir. 1986) (responding to disturbance with neither lights nor siren activated); Walton v. Salter, 547 F.2d 824 (5th Cir. 1976) (responding to armed robbery call).[5]

For these reasons, I conclude that the intent-to-harm standard of Lewis applies to a police officer's high-speed driving in response to other types of emergencies, as the Seventh Circuit held in Carter v. Simpson, 328 F.3d 948, 952 (7th Cir. 2003). Plaintiffs presented no evidence that Deputy Larson intended "to cause harm unrelated to the legitimate object of" responding to the emergency. Lewis, 523 U.S. at 836. Therefore, I would reverse the order of the district court in part and remand with directions to dismiss all of plaintiffs' substantive due process claims.

In addition to ignoring the mandates of Lewis and Helseth and creating a needless conflict with the Seventh Circuit's decision in Carter, the majority's decision has two other serious flaws:

---

[5]Courts have also declined to impose substantive due process liability on police officers for alleged careless driving in non-emergency situations. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996), cert. denied, 522 U.S. 966 (1997); Hill v. Shobe, 93 F.3d 418, 420-21 (7th Cir. 1996); Leddy v. Township of Lower Merion, 114 F. Supp. 2d 372, 376 (E.D. Pa. 2000). This issue is not before us.

1. The majority ignores whether the intent-to-harm standard should apply to the manner in which Deputy Larson drove the police vehicle at high speed. Two aspects of a police officer's conduct are open to challenge in this type of case, the decision to engage in high-speed driving and the way the police car is then driven. In this case, plaintiffs placed both at issue, alleging that the deputies' decision to respond to the call and their operation of the vehicle "were conscience-shocking, and reckless, callous, outrageous and deliberately indifferent to the rights of Talena Terrell." Even if the majority is correct in applying the deliberate indifference standard to Larson's decision to respond, that decision was "outside the time period" of his subsequent high-speed driving. Neal, 217 F.3d at 959. The intent-to-harm standard of Helseth clearly applies to plaintiffs' claims based upon the manner in which Larson drove his vehicle while responding to the emergency call. See Slusarchuk v. Hoff, 346 F.3d 1178, 1182-83 (8th Cir. 2003) (quoting Helseth, 258 F.3d at 871), cert. denied, --- U.S. ----, 124 S. Ct. 2018 (April 19, 2004).

2. To prevail on their substantive due process claim, plaintiffs must prove, not only that Deputy Larson's behavior reflected deliberate indifference, but also that it was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8.[6] Like the district court, the majority fails to consider whether Deputy Larson's conduct was conscience shocking. Not all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term. See Lewis, 523 U.S. at 849 ("*some* official acts in this range *may* be actionable") (emphasis added). Because the conscience-shocking standard is

---

[6]To violate substantive due process, the conduct of an executive official must be conscience shocking *and* must violate "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (quotation omitted). The latter inquiry is not an issue in this case.

-17-

intended to limit substantive due process liability,[7] it is an issue of law for the judge, not a question of fact for the jury. See Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992) ("arbitrary government action that must 'shock the conscience' of federal judges"); City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) ("Substantive due process claims are, of course, routinely reserved without question for the court," citing Lewis 523 U.S. at 853-55); Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998); Mason v. Stock, 955 F. Supp. 1293, 1308 (D. Kan. 1997).[8]

In my view, Deputy Larson's conduct was not conscience shocking as a matter of law. While the decision to respond committed the deputies to high-speed driving that always entails some risk to highway safety, responding to this type of emergency within a police officer's assigned territory does not reflect the criminal recklessness that is a prerequisite to substantive due process liability under the deliberate indifference standard. See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994). Traffic accidents of this nature are tragic but do not shock the modern-day conscience. Thus, Deputy Larson is entitled to summary judgment even under the deliberate indifference standard of fault adopted by the majority.

_____

[7]As the Court repeated in Lewis, "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848 (quotation omitted).

[8]Our court has not squarely addressed this issue. Compare Rogers v. City of Little Rock, 152 F.3d 790, 797 (8th Cir. 1998) (affirming a district court "conclusion" that conduct was conscience shocking), with Hawkins v. Holloway, 316 F.3d 777, 784 (8th Cir. 2003) (concluding that the evidence "is insufficient to raise a genuine issue of fact concerning whether that conduct . . . was conscience shocking").